IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff*,<br>v.<br><br>JEFFREY DAVID PIERCE,<br><br>        *Defendant*. | Case No. 20-40068 |

## MOTION TO COMPEL DISCOVERY

Pursuant to Fed. R. Crim. P. 16 and the authorities cited herein, Defendant Jeffrey Pierce moves the Court for an order compelling the government to disclose: (a) All technical manuals and change logs specific to GrayKey version 1.6.7.9; (b) a licensed GrayKey version 1.6.7.9 hardware and cables used to mount the iOS device and extract data; (c) a licensed and installable copy of any associated GrayKey software applications required to access data extracted by the GrayKey hardware; and (d) member access to any web portals hosted by GrayShift in connection to GrayKey including a Grayshift SSO Account as advertised on their website to "access critical resources for success" and any additional information generated by the software and hardware during the extraction process.

## MEMORANDUM IN SUPPORT

### Background

On February 1, 2021, Defendant Pierce filed a motion seeking suppression of evidence derived from his phones as a direct result of officers' deliberate misrepresentation of the terms of a warrant that specifically prohibited agents from

compelling the passcodes to his iPhone XS Max and iPhone 5s. The government responded on February 26, asserting inevitable discovery. Specifically, the government contends it inevitably would have gained access to the contents of Pierce's phones using a digital forensic tool called GrayKey. Doc. 37, Government's Brief in Opposition at 37.

Relying on an affidavit by Detective Patrick Ladd, the government contends GrayKey would have removed Apple's encryption security features, bypassing the need for passcodes to the iPhones. *Id.* This, Ladd claims would have provided access to 95% of the contents of the devices—including, he claims, "pictures and messages." *Id.*

Ladd says he is also confident GrayKey would have been able to facilitate a "brute force attack" on the iPhones to obtain 100% of the phones' contents because he has done so successfully many times. *Id.* Notably, however, Ladd does not specify the models, iOS versions, or security settings enabled on the phones it has allegedly unlocked or whether they are comparable to Pierce's devices. *See* Gov't Exhibit 12. Nor does he alleged that his brute force attacks are <u>always</u> successful. *Id.*

Implicitly acknowledging that GrayKey is <u>not</u> always successful with brute force attacks, the government asserts that it still would have obtained the contents of Pierce's phones by guessing passcodes. Doc. 37 at 39. But the government omits that iPhones can be permanently disabled or factory reset after ten failed passcode attempts. Exhibit 104, Affidavit of Digital Forensics Expert Michele Bush at 4. So,

either GrayKey is necessary to accomplish this task (in a way that has not been explained), or police must get really lucky.

Because access to GrayKey is "restricted to local, state, and federal law enforcement, public safety, and defense agencies in select countries," Gov't Exhibit 12 at 2, the Defendant's computer forensics expert cannot substantiate the veracity of the government's claims unless the government provides access through discovery, Exhibit 104. Accordingly, on March 3, 2021, defense counsel requested access to a licensed copy of the GrayKey physical hardware, associated software, manuals, and any other documentation regarding the tool's operations. On March 4, 2021, the government declined to provide such access.

## Arguments and Authorities

A criminal defendant has a right to inspect all documents, data, or tangible things within the Government's "possession, custody, or control" that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Items in the government's control are material to preparing the defense when they will be helpful to the defense in preparing its case, either through its ability to lead to other admissible evidence or through its relevance to a defense, to rebuttal, or to impeachment. *See United States v. King*, 928 F.Supp. 1059, 1062 (D. Kan. 1996).

### I. GrayKey is material to preparing Pierce's defense.

Pending before the Court is Pierce's motion to suppress evidence obtained from his phones because officers unlawfully compelled the passcodes necessary to unlock them. The government's response brief asserts that, even if officers unlawfully

3

compelled Pierce's passcode, suppression is unwarranted because the FBI inevitably would have gained access to the phones through GrayKey. The government's response makes GrayKey material to Pierce's suppression argument.

The government cannot claim its forensic tool rendered useless the passcodes officers compelled from Pierce while simultaneously denying the defense the information necessary to evaluate its claim. This is particularly true when, even beyond the implicit acknowledgements in Ladd's affidavit, ample evidence provides reason to doubt that the government would have been able to access the data it now possesses had officers not compelled the Defendant to provide his passcodes.

The Defendant has engaged Certified Computer Forensics Examiner Michele Bush to serve as a consultant regarding the accuracy of statements made by the government regarding the techniques and software used to access and acquire electronic evidence seized in this case. Exhibit 104 at 2. In an affidavit submitted with this motion, Bush explains why the government's claims of inevitable discovery warrant skepticism and why defense access to GrayKey is necessary to assess and respond to those claims.

According to Bush, if the government's claims about GrayKey's iPhone hacking capabilities are all true, then the tool is significantly more advanced than its market competitors:

> [T]he industry leading mobile forensic tools available to the private sector including Cellebrite and Oxygen would not have been able to extract the same data obtained by the Government without the passcode. Rather, Cellebrite and Oxygen advertise that only limited

4

> system data (i.e Partial File System) can be extracted from an iOS device without knowing the passcode.

*Id.* at 4.  However, it appears highly unlikely these similar forensic tools are so drastically different and much more likely that the government has been selective in revealing information about how GrayKey works.

First, Bush notes that Detective Ladd's affidavit omits any discussion of the difference in the security of Apple devices Before First Unlock (BFU) and After First Unlock (AFU).  AFU is "an unencrypted state the device enters after the phone has been unlocked for the first time since being powered on." *Id.* at 3.  Bush admits that "[f]orensic software is estimated to extract ninety-five (95) percent of the data from Apple iOS device in AFU mode." *Id.*  This is in contrast to BFU, which is "a secured state the phone enters immediately after restarting and prior to being unlocked for the first time." *Id.*  According to Bush, **when an iPhone is recovered in BFU mode and the passcode is unknown, forensic software is estimated to only extract about ten (10) percent of the data.** *Id.*

While Bush cannot attest to GrayKey's specific capabilities with a device found in BFU mode, publicly available testimony regarding the tool confirms its hacking capabilities are reduced for devices in BFU mode.  According to a computer forensic examiner testifying at a hearing held February 3, 2020, in the District of Minnesota, GrayKey's ability to bypass security and exploit an Apple device is dependent upon the device being in AFU mode. Exhibit 105, Motions Hearing Transcript from D. Minn. Case No. 19-CR-250 (Doc. 79) at 60:5-8, 64:4-14.

5

This may be extremely significant to the government's inevitable discovery argument. The iPhone 5s was absolutely in BFU mode, as it was powered off with no battery charge when TFO Moore found it. And, based on TFO Moore's description of the iPhone XS Max when he tried to use facial recognition, Bush says it appears the iPhone XS Max was also in BFU mode before Pierce was compelled to unlock it. Exhibit 104 at 3 & 5. If both iPhones were in BFU mode, then there is reason to believe Detective Ladd greatly erred in his estimate of how much data GrayKey would have been able to extract without having the passcodes. Indeed, if GrayKey is similar to other forensic software and could only extract 10% of the data on each phone, it is possible none of the data ultimately obtained would be of evidentiary value to the government.

Even if the iPhone XS Max was in AFU mode, a default setting likely would have posed a problem for Ladd and GrayKey. Since the summer of 2018, all Apple devices automatically enable "USB Restricted Mode"—a setting directed at "preventing devices like the GrayKey box used by law enforcement to brute force [the] passcode" by disabling the iPhone's lightning port one hour after the phone is last locked.[1]

Also warranting further scrutiny is the potential effect of the government performing an "Escrow Unlock" by making GrayKey a "trusted device." *Id.* at 5. And

---

[1] Andrew O'Hara, "How to use Apple's latest 'USB Restricted Mode' security feature included in iOS 11.4.1," Apple Insider (July 11, 2018), available at https://appleinsider.com/articles/18/07/11/how-to-use-apples-latest-security-feature-included-in-ios-1141.

6

Ladd notably neglected to discuss two facts that undermine the government's passcode bank theory and its brute force theory: "(1) Apple iOS devices can be permanently disabled or factory reset after ten failed passcode attempts, and (2) that iOS version 10.3 and later include an added security feature using Secure Element that restricts brute force attacks to approximately 100 passcodes per day." *Id.* at 4.

Nor did Ladd acknowledge what the Minnesota forensic examiner admitted under oath: "**GrayKey cannot access 100 percent of Apple devices**." Exhibit 105, at 62:3-4 (emphasis added). According to the Minnesota examiner, "roughly 90 percent" of Apple devices that are turned on and have been recently used (*i.e.,* in AFU mode) can be accessed by GrayKey without the user's passcode. *Id.* at 62:3-10. It follows that **roughly 10 percent of Apple devices <u>cannot</u> be accessed by GrayKey without the user's passcode *even when they are in AFU mode.***

The Minnesota examiner was not asked to explain why GrayKey cannot access some Apple devices, but news articles note that GrayKey's effectiveness is ever-changing as its manufacturer and Apple engage in a constant game of cat and mouse—with one always trying to thwart the other.[2] Reports from the fall of 2018 stated: (1) Apple updated its operating system to block GrayKey from doing exactly

---

[2] *See, e.g.,* Joseph Cox, "iPhone Unlocking Tech GrayKey Went Up in Price Because Hacking iPhones Got Harder," Motherboard Tech by Vice (Mar. 17, 2020), available at https://www.vice.com/en/article/884ebx/iphone-unlocking-GrayKey-price-went-up (". . . the capability to unlock iPhones is a fluid issue, with some law enforcement officials being able to access devices and others not. **Apple has made continuous improvements to the security of its iPhones, and particularly around thwarting those who have physical access to the device**.") (emphasis added).

7

what Ladd claims he would have been able to do; and (2) GrayKey's manufacturer confirmed Apple's efforts were successful at preventing GrayKey from hacking into iPhones. Specifically, in October 2018, multiple news outlets reported that the iOS 12 update released in September 2018 specifically blocked GrayKey and that GrayKey could not figure out why.[3] Notably, the iPhone XS Max Pierce possessed at the time of his arrest first launched in September 2018—meaning it never operated an iOS version lower than iOS 12.

It is material to the defense to determine what limitations, vulnerabilities, and features existed in GrayKey version 1.6.7.9 to determine how law enforcement gained access to the iPhone evidence and the likelihood the tool could extract the same data had it not compelled the Defendant to provide his passcodes. The government's assertions regarding GrayKey's capabilities should be independently verifiable or refutable, but only with access to the physical hardware, associated software, member

---

[3] *See* Lucas Mearian, "Apple appears to have blocked GrayKey iPhone hacking tool," Computer World (Oct. 25, 2018), available at https://www.computerworld.com/article/3268729/apple-appears-to-have-blocked-GrayKey-iphone-hacking-tool.html ("Multiple sources familiar with the GrayKey have told Forbes that **the device can no longer break the passcodes of any iPhone running iOS 12 or above**. iOS 12 was released by Apple last month.") (emphasis added); Sam Blum, "Apple Just Made Its Phones Impossible for Police to Hack," Popular Mechanics (Oct. 25, 2018), available at https://www.popularmechanics.com/technology/security/a24219241/apple-GrayKey-ios12-police-hacking/ ("... GrayKey's parent company GrayShift, who confirmed that the update specifically blocks the GrayKey app, and they cannot figure out why. Now, **if a phone has the latest iOS update, GrayKey is only able to perform a "partial extraction," limiting its efficacy to useless scraps of unencrypted files and some metadata**.") (emphasis added).

8

access to necessary web portals hosted by GrayShift, technical manuals, and change logs. Without such access, the defense is flying blind—unable even to develop appropriate cross-examination questions for the prosecution's witnesses.

## II. Pursuant to Rule 16, the government must provide access to GrayKey.

Because the GrayKey materials the defense requests are within the government's "possession, custody, or control" and "material to preparing the defense," Rule 16 instructs that they must be produced.

The Ninth Circuit case *United States v. Budziak*, 697 F.3d 1105 (2012), is instructive. In *Budziak*, the FBI used a computer program called "EP2P" to search for the child pornography files and download them from the defendant's computer. 697 F.3d at 1107. The defendant filed motions to compel the FBI's EP2P software or a copy of the program, asserting they were necessary to preparing his defense. *Id.* at 1108. The district court refused—only to be found in error by Ninth Circuit Court of Appeals. *Id.* at 1113.

The appellate court said the scenario was akin to discovery on narcotics detection dogs. Just as materials on a narcotics dog's qualifications are crucial to a defendant's ability to assess the dog's reliability and cross-examine the dog's handler, access to the EP2P computer program was crucial to Budziak's ability to assess the program and the testimony of the FBI agents who used it. *Id.* at 1112. In both situations, the information is necessary to effectively challenge the means by which the government obtained evidence against a defendant.

Budziak had the opportunity to cross-examine the government's EP2P expert, but that was not sufficient—because he was denied access to the information necessary to conduct an *effective* cross-examination:

> As the Third Circuit has held, "A party seeking to impeach the reliability of computer evidence should have sufficient opportunity to ascertain by pretrial discovery whether both the machine and those who supply it with data input and information have performed their tasks accurately." *United States v. Liebert*, 519 F.2d 542, 547–48 (3d Cir.1975); *see also United States v. Dioguardi*, 428 F.2d 1033, 1038 (2d Cir.1970) ("It is quite incomprehensible that the prosecution should tender a witness to state the results of a computer's operations without having the program available for defense scrutiny and use on cross-examination if desired.").

*Id.* And it was not appropriate for the district court to rely on declarations from the government's expert regarding whether discovery of this evidence would be helpful to the defense. *Id.* at 1112-1113. Accordingly, the Ninth Circuit held it was an abuse of discretion for the district court to deny Budziak discovery on the EP2P program—an error with the potential to justify reversal of Budziak's conviction. *Id.* at 1113.

Other cases have followed *Budziak*. For example, the district court in *United States v. Crowe*, No. 11 CR 1690 MV, 2013 WL 12335320, at *7 (D.N.M. Apr. 3, 2013), required the government to allow a defense expert to examine and use a copy of the government's confidential Shareaza software. In *United States v. Gonzales,* No. CR-17-01311-001-PHX-DGC, 2019 WL 669813, at *8 (D. Ariz. Feb. 19, 2019), the district court required the government to provide similar access for Torrential Downpour, law enforcement's modified version of the BitTorrent protocol, which it uses to search for torrents containing known child pornography files.

This Court should follow suit and require the government to grant the Defendant's expert access to the program it claims defeats his suppression claim.

### III.  Qualified law enforcement privilege does not apply.

In *Roviaro v. United States*, the Supreme Court held that the government had a privilege to withhold from disclosure the identities of certain confidential informants. 353 U.S. 53, 59 (1957). Although some lower appellate courts have expanded this qualified law enforcement privilege to other investigative techniques, it does not prevent disclosure of the GrayKey materials the Defendant seeks.

In *Roviaro*, the Supreme Court held that the decision of whether the government may withhold material information under a law enforcement privilege depends on a case-by-case basis balancing analysis:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest and protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 62. Consideration of the interests at play here reveals that the Defendant's interest weighs far heavier than does the government's.

Because "a cell phone search would typically expose to the government far more than the most exhaustive search of a house," *Riley v. California*, 573 U.S. 373, 396 (2014), the government fears public disclosure of the tool it uses to hack iPhones—worried public knowledge might ultimately undermine its effectiveness. But the defense does not request public disclosure of the GrayKey device or related

materials. It only seeks access sufficient to permit the defense to evaluate the claims raised by the government in this action. A protective order can sufficiently address the government's concerns.

Meanwhile, Pierce's significant liberty interest can only be protected by the discovery he seeks. If convicted of the charges against him, Pierce faces a penalty of up to 70 years' imprisonment (a lifetime behind bars for the 40-year-old Defendant). The suppression motion is critical to his defense. And the government has made GrayKey critical to resolution of that motion. Although the government's position appears to suffer from significant weaknesses, the defense cannot competently address it without the requested GrayKey materials. Nor can the Court be assured that it has been presented with all information necessary to assure it has a full understanding of GrayKey's capabilities as they pertain to the Defendant's phones.

That is, defense access to the request materials is essential to a fair determination of the suppression motion. And the Supreme Court instructs that "[w]here the disclosure . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." *Id.* at 60-61.

                        Respectfully submitted,

                        Joseph, Hollander & Craft LLC
                        *Attorneys for the Defendant*

By:    s/ Christopher M. Joseph
         Christopher M. Joseph, #19778
         Carrie E. Parker, #24988
         1508 S.W. Topeka Blvd.
         Topeka, Kansas 66612
         (785) 234-3272
         (785) 234-3610 fax
         cjoseph@josephhollander.com
         cparker@josephhollander.com

## CERTIFICATE OF SERVICE

      I hereby certify that on March 12, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

                                          s/ Christopher M. Joseph
                                          Christopher M. Joseph