IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.

JEFFREY DAVID PIERCE,

    *Defendant.*

Case No. 20-40068

## SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO SUPPRESS

At the hearing on Defendant Jeffrey Pierce's Motion to Suppress, the Court requested supplemental briefing regarding Defendant's "standing" to challenge the lawfulness by which police obtained his phone's passcode from his wife.[1] What was discussed at the hearing as a matter of standing might be better summarized like this:

> The United States Supreme Court has instructed that the inevitable discovery and independent source doctrines allow admission of evidence that has been discovered "by lawful means" "wholly independent of any constitutional violation." *Nix v. Williams*, 467 U.S. 431, 443-444, 104 S. Ct. 2501 (1984). Did the Supreme Court mean ***any*** constitutional violation—including a violation of another's rights? Or can evidence obtained in violation of a criminal defendant's constitutional rights be saved from exclusion when law enforcement actually did or inevitably would have come about the same evidence by violating the rights of another?

Defense counsel finds no Tenth Circuit case law specifically addressing these questions. But case law from other jurisdictions instructs that two wrongs do not

---

[1] Because the Court gave the parties a limited scope for additional briefing, the defense will not respond to sections I, II, and IV of the prosecution's supplemental brief.

make a right—particularly not on these facts.   This Court should follow the example set by these other jurisdictions and hold that the independent source and inevitable discovery doctrines do not apply to evidence that was or would have been discovered by unlawful means.

The most on-point and persuasive case on this subject is *United States v. Johnson*, 380 F.3d 1013 (7th Cir. 2004).   Johnson and two others were sitting in his parked car when two police officers approached and, without legal justification, ordered the three occupants to get out of the car.   One officer searched under Johnson's seat and found drugs there, while the other officer searched the two passengers and found drugs and counterfeit money on their persons.   Finally, the officers searched the trunk and found more counterfeit money and a color copier.   Johnson moved to suppress the evidence seized in the trunk since the police had no legal basis for seizing him and searching under his seat and, therefore, lacked probable cause to search the trunk of his car.   The district court denied his motion, noting that, irrespective of the drugs found under Johnson's seat, the drugs and counterfeit money found on the passengers gave police probable cause to search the entire vehicle. *Johnson*, 380 F.3d at 1014-1015.

Writing for a unanimous panel of the Seventh Circuit Court of Appeals, Judge Richard Posner began his analysis of this issue by acknowledging the only law the prosecution offered in section III of its brief.   Specifically, citing *Rakas v. Illinois* for support, he wrote: "The search of the passengers was illegal, but normally *A* cannot challenge the legality of the search of *B* even when the search produces information

used to convict *A.*" *Id.* at 1015. But, Posner explained, that wasn't quite the issue. The issue was "whether the fact that an illegal search of other people would have turned up the evidence illegally seized from him should allow the government to use that evidence against him." *Id.* Posner declared that the answer must be no. "An affirmative answer would have the paradoxical effect that two illegal searches would make a legal search." *Id.*

Judge Posner explained the necessity of this rule using an analogy from tort law:

> two defendants each start a fire, and the fires join and destroy the plaintiff's house; either fire, however, would have destroyed his house. Each defendant could therefore argue that he should not be liable for the damage because it would have occurred even if he had not set his fire; but the law rejects the argument and makes both defendants liable, under the rubric of "concurrent causation." And so in the famous old case of Cook v. Minneapolis, St. Paul & Sault Ste. Marie Ry., 98 Wis. 624, 74 N.W. 561, 564 (1898), we read that "it is no defense for a person against whom negligence which causes damages is established, to prove that without fault on his part the same damage would have resulted from the negligent act of the other, but each is responsible for the entire damage." [Citations omitted.] The tortfeasor cannot avoid liability by pointing to an alternative unlawful cause of the damage that he inflicted.

*Id.* at 1016. In tort law, "[t]he reason for denying liability when there is no causal relation between the violation of a duty and the harm of which the plaintiff is complaining is, as we noted earlier, that punishing a person for an act that does no harm is not needed to deter harmful acts. The reason fails when there is harm that would not have occurred had there not been unlawful acts." *Id.*

Likewise, the theory behind the independent source and inevitable discovery doctrines it that there is no need to punish law enforcement when the same evidence

3

they came about illegally actually was or certainly[2] would have been obtained lawfully. *Id.* at 1016. But a sanction *is* necessary when police only come about their evidence only by a series of illegal acts. *Id.* at 1017-1018. "The assumption that the independent source must be 'lawful' is thus not merely an accidental dictum; it is part of the essential logic of the rule and of its origins in fundamental principles of tort law." *Id.* at 1018.

The Seventh Circuit could find only one similar case on this issue: *United States v. Scott*, 270 F.3d 30 (1st Cir.2001). In that case, police obtained evidence as a result of an illegal search of Scott's car. Had the police not searched Scott's car illegally, they inevitably would have obtained the same evidence through the answers Scott's criminal associate, Stephens, gave during his interrogation. However, Stephens's statements were taken in violation of Stephens's *Miranda* rights.

The *Scott* panel acknowledged that the Supreme Court "invariably" states that the doctrine of inevitable discovery requires "legal" or "lawful" discovery. *Id.* at 43. But, it noted, "[n]one of those cases involved a third party and a defendant's claim that the inevitable discovery doctrine should not apply because the third party's rights had been violated." *Id.* Accordingly, the First Circuit Court of Appeals was tasked to decide "whether the government in showing inevitable discovery may rely

---

[2] *Nix v. Williams*, 467 U.S. 431, 444, 104 S. Ct. 2501 (1984) (inevitable discovery involves no speculative elements but focuses on demonstrated historical facts).

4

on an illegal action that did not violate the relevant defendant's personal rights." *Id.* at 44.

The court acknowledged that "[t]he deterrence rationale may be significant in such cases as well"; that "application of the inevitable discovery exception to [such cases] would allow the government to benefit at least somewhat from the unconstitutional actions of the [] police"; and the fact of "two illegalities rather than one, [] arguably strengthens rather than weakens the need for suppression as a means of deterrence." *Id.* at 44. Nonetheless, it regarded "the distinct question whether the government in showing inevitable discovery may rely on an illegal action that did not violate the relevant defendant's personal rights" as a "close" question. *Id.* at 44. And it ultimately found that the illegality of the independent source was only relevant, not dispositive. *Id.* at 45.

According to the *Scott* panel, the ultimate determination of whether to apply the doctrine to evidence gained by unlawful means must turn on the unique facts of a case and, in particular, whether application of the doctrine would "provide an incentive for police misconduct or significantly weaken fourth amendment protection." *Id.* The court found that the officer who questioned Stephens had little incentive to violate Stephens's rights in order to gain advantage over Scott. *Id.* Rather, because Stephens was the target of a criminal investigation, the exclusionary rule already operated to incentivize lawful questioning in order to be able to use Stephens's statements against him in a criminal case of his own. *Id.* Accordingly, the court did not believe application of the inevitable discovery doctrine to Scott's case

would incentivize unconstitutional behavior in similar cases. *Id.* But it warned: "Other cases may present different incentives and warrant a different outcome." *Id.*

This case presents different incentives and warrants a different outcome. Because Keelin Pierce was not the target of a criminal investigation, Special Agents Trisha McCormick and Jarrod Forgues-Schlenker were not seeking evidence to use against her in court. As a result, they did not have the same motivations and concerns as the officer who questioned Stephens. While application of the inevitable discovery doctrine to Scott's case would not incentivize unconstitutional behavior in subsequent similar cases, application of the independent source doctrine in this case will. Specifically, the next time these agents are presented with this scenario, they will have no qualms about violating a wife's constitutional rights as a means to the end of collecting evidence against her husband. Instead, they will be encouraged to do so because not only will it not create a barrier to admissibility of the evidence, it might ultimately preserve evidence gained in violation of the husband's constitutional rights. In sum, if the government is permitted to claim Keelin as an independent source of the passcode, the "core rationale" underlying the exclusionary rule would be undermined. *Williams,* 467 U.S. at 442.

On the facts presented in this case, the Seventh and First Circuits are aligned. Neither court would permit two wrongs to make a right.

If this Court does, it will do more than feed a circuit split. It will create inconsistent law within this very state. In 2006, the Kansas Supreme Court adopted the *Johnson* rationale:

6

> Hence, as in *Johnson*, the prosecution's position is that, because there were two illegal searches, Ackward cannot invoke the exclusionary rule against the use of the evidence so obtained. As we have seen, the *Johnson* court could see no sense in the government's position and held that the inevitable discovery of evidence by unlawful means did not render it admissible. We agree. The district court erred in admitting the gun into evidence.

*State v. Ackward,* 281 Kan. 2, 23, 128 P.3d 382 (2006). While this Court is not bound by the *Ackward* decision, the Kansas agents who investigated this case are. And fifteen years after the *Ackward* decision, it should come as no surprise if their illegal conduct resulted in a loss of evidence. A divergent ruling would result in Kansas law enforcement officers operating under different rules depending on whether they anticipate prosecution in federal or state court.

Pursuant to the foregoing case law, the Court should hold that the inevitable discovery and independent source doctrines only allow admission of evidence that has been discovered "by lawful means" "wholly independent of any constitutional violation." *Williams,* 467 U.S. at 443-444. Therefore, evidence obtained in violation of a criminal defendant's constitutional rights cannot be saved from exclusion when law enforcement actually did or inevitably would have come about the same evidence by violating the rights of another. More specifically, the Court should hold that, because McCormick and Forgues-Schlenker violated Keelin's Fourth Amendment rights, Keelin's provision of the passcode cannot save the phone evidence from exclusion under the inevitable discovery and independent source doctrines.

Finally, the government raised one more issue of Fourth Amendment "standing"—asserting that Keelin did not have a protected interest in the phone at

issue because that phone was with Jeff and Keelin had another phone with her. The government is confusing possession with ownership. Keelin did own the phone. Her ownership interest in the phone was established at hearing with evidence that: (1) the phone in Jeff's possession was part of a family plan that was paid by the Keelin and Jeff's joint account; and (2) Keelin knew the password to the phone (meaning she had access to and control over the device). And Keelin's ownership interest in that phone was protected by the warrant's prohibition on "compel[ling] that the device owner state or otherwise provide the password." Exhibit 101 at 22; *see also United States v v. Jones,* 565 U.S. 400, 407-408, 132 S.Ct. 945 (2012) (recognizing that the Fourth Amendment traditionally protects property rights).

        Respectfully submitted,

        Joseph, Hollander & Craft LLC
        *Attorneys for Defendant Jeffrey Pierce*

By:    s/ Christopher M. Joseph
        Christopher M. Joseph, #19778
        Carrie E. Parker, #24988
        1508 S.W. Topeka Blvd.
        Topeka, Kansas 66612
        (785) 234-3272
        (785) 234-3610 fax
        cjoseph@josephhollander.com
        cparker@josephhollander.com

# CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2020, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

s/ Christopher M. Joseph  
Christopher M. Joseph